IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:09-CR-100-D-3
7:11-CV-43-D

| | |
|---|---|
| HUMBERTO DIAZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | **MEMORANDUM and** |
| v. ) | **RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This case comes before the court on petitioner Humberto Diaz's pro se motion (D.E. 234) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("petition" or "§ 2255 petition"), and the government's motion (D.E. 249) to dismiss the petition.[1] On 3 June 2013, Chief District Judge James C. Dever III denied the § 2225 petition and granted the government's motion to dismiss. (*See* 3 June 2013 Order (D.E. 262)). On appeal, the Fourth Circuit vacated the portion of the court's order denying petitioner's claim that counsel rendered ineffective assistance in failing to file a notice of appeal as requested[2] by petitioner and remanded for further proceedings on this claim. (*See* 4 Dec. 2013 opinion (D.E. 282)). By order entered 6 January 2014 (D.E. 284), Chief Judge Dever referred this claim to the undersigned for an evidentiary hearing and the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings. The

---

[1] Petitioner filed a memorandum (D.E. 235) in support of the petition, and the government filed a memorandum (D.E. 250) in support of its motion to dismiss and one exhibit (D.E. 250-1). Petitioner filed a response in opposition to the government's motion (D.E. 252) and two exhibits (D.E. 252-1; 252-2). Page citations to the petition and filings relating to it are to page numbers assigned by the court's CM/ECF electronic filing system.

[2] The terms "instructed," "requested," "told," "asked," and like terms describing an expression by petitioner to Mr. Leonard that he wanted Mr. Leonard to file an appeal were used interchangeably at the hearing and are so used herein.

evidentiary hearing was held on 9 April 2014.[3] (*See* D.E. 296). The witnesses at the hearing were petitioner; Jerry Wayne Leonard, petitioner's trial attorney; and Juan Rivera, petitioner's former employer, who petitioner now alleges asked Mr. Leonard to file an appeal on his behalf. For the reasons stated herein, it will be recommended that the government's motion to dismiss be granted as to the remaining claim and that this claim be dismissed.

## BACKGROUND

On 25 January 2010, petitioner pled guilty, pursuant to a plea agreement (D.E. 124), to one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 ("robbery offense"), and one count of use of a firearm in furtherance of a crime of violence, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2 and 924(c) ("firearm offense"). Before petitioner entered his plea, the court explained to him, in detail, his various rights, including his right of appeal (Arraignment Transcript ("Arr. Tr.") (D.E. 261) 13:7 to 14:4); the maximum sentence he faced for the charges to which he was pleading guilty (*id*. 20:19 to 24:25); and the court's role as making the final determination on his sentence, regardless of any estimate by his counsel (*id.* 26:2 to 27:6). Petitioner repeatedly acknowledged that he understood what the court explained to him. (*Id*. 18:2-18; 20:2-11; 22:4-21; 23:5-16; 24:5-25; 25:2-17; 26:7-24; 27:5-22; 29:17-31:2). Petitioner also confirmed, when asked by the court, that no one had promised him what his sentence would be or induced him to plead guilty. (*Id.* 29:11-16). In the plea agreement, petitioner made similar acknowledgements regarding sentencing and his appeal rights. (Plea Agmt. ¶¶ 2.c., 3.a. & c.).

---

[3] As authorized by the court following the evidentiary hearing (*see* Minute Entry text at D.E. 296), petitioner filed a supplemental memorandum (D.E. 305). In lieu of a response to petitioner's supplemental memorandum, the government filed a notice (D.E. 307) indicating that it would be relying on the record developed at the evidentiary hearing.

At petitioner's sentencing hearing on 18 August 2010, the court granted the government's motion (D.E. 206) for a downward departure or variance based on petitioner's substantial assistance (Sentencing Transcript ("Sent. Tr.") (D.E. 295) 9:13-17), and sentenced petitioner to 48 months for the robbery offense and a consecutive 42 months for the firearm offense, for a total term of imprisonment of 90 months (*id*. 17:17-24). After imposing the sentence, the court again explained to petitioner his appeal rights, including that a notice of appeal must be filed within 14 days of the judgment, and specifically informed petitioner that if requested, "the Clerk of Court would prepare and file a notice of appeal on [his] behalf." (*Id*. 19:25 to 20:22). No appeal of petitioner's conviction was filed, and on 8 February 2011, petitioner filed the instant petition, which, as discussed above, is now before the undersigned.

## APPLICABLE LEGAL STANDARDS

**I.     28 U.S.C. § 2255**

Pursuant to 28 U.S.C. § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The burden is on the petitioner to establish his claim to relief by a preponderance of the evidence. *See, e.g., Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . ."); *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1 (E.D.N.C. 25 Oct. 2010)

3

Case 7:09-cr-00100-D   Document 310   Filed 11/12/14   Page 3 of 13

("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence.").

## II. Ineffective Assistance of Counsel

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id*. at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Concerning the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Id*. In the context of a guilty plea, a petitioner must demonstrate he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. at 478 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id*.

## III. Legal Standards for Determining Credibility

In assessing the credibility of witnesses, trial courts consider "variations in demeanor and tone of voice." *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). In addition, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.*; *see also United States v. Marcavage*, 609 F.3d 264, 281 (3rd Cir. 2010) (applying factors in *Anderson* in holding that trial court's crediting of the government's evidence was error on the grounds that "[t]here are simply too many inconsistencies and gaps in the testimony of the government's witnesses, not to mention substantial contradictions between that testimony and other evidence in the record"). Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements. *See, e.g., United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010).

## DISCUSSION

### I. Overview of Petitioner's Contentions

In his § 2255 petition, petitioner alleges that he received ineffective assistance of counsel because Mr. Leonard[4] failed to file a notice of appeal at his request. (Pet. 4, Ground One). In the included supporting memorandum, petitioner more specifically alleges that he "requested his counsel to file a notice of appeal for he wanted to appeal his sentence and conviction for his codefendant's use and possession of a firearm in and during the robbery, as he had no reasonable foreseeable knowledge that his codefendant had a firearm." (Pet.'s Mem. 3).

In his motion for certificate of appealability, petitioner similarly stated:

[Petitioner] was clear in requesting his counsel to file an appeal because his sentence was excessive and contrary to his promise. It occurred once the

---

[4] At petitioner's initial appearance on the charges, petitioner was appointed counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A (D.E. 23), and, shortly thereafter, Mr. Leonard entered his notice of appearance on petitioner's behalf (D.E. 32).

sentencing proceeding concluded, to appeal his sentence was the wish of [petitioner], so he requested his counsel to do it.

(Cert. of App. (D.E. 298-2) 5).

In his appeal from this court's initial denial of his § 2255 petition, petitioner asserted in his pro se brief:

> [Petitioner] requested his counsel to submit his appeal. It is clear that, despite his expressed desire to appeal, his sentence counsel did not file a notice of appeal. [Petitioner] discussed with his defense counsel because he received a term imprisonment for firearm charge when he was promised that said charge under the Plea Agreement should be dismissed. Since *counsel didn't follow the explicit instructions to file the appeal made by [petitioner]*, it constituted ineffective assistance of counsel and clear ground under 2255 motion to meet a relief.

(App. Brief (D.E. 298-1) 17 (emphasis added)). He provided further details regarding the circumstances of his request for an appeal in his sworn affidavit filed in support of his appeal:

> 7. When the hearing of my sentence concluded, I was unsatisfied with the term of 90 months imprisonment received and requested my counsel to appeal. *Prior to being removed from the courtroom*, I specifically instructed and requested my counsel to submit an appeal on my behalf.

(Pet.'s Aff. (D.E. 298-1) 24 ¶ 7 (emphasis added)). In sum, from the initial filing of his § 2255 petition through the subsequent proceedings on appeal, petitioner has asserted that he expressly requested Mr. Leonard to file an appeal before he left the courtroom after sentencing because he was dissatisfied with the 90-month sentence that he received.

In a radical departure from these allegations, petitioner asserted for the first time at the evidentiary hearing before the undersigned that he did *not* request Mr. Leonard to file an appeal on the day of his sentencing, but only later, after he had arrived at his designated prison facility. (Evidentiary Hearing Transcript ("Tr.") 6:24 to 7:9). As detailed below, he testified to two conflicting versions of his now post-sentencing hearing request for an appeal.

By testifying that he made his request for an appeal well after the sentencing hearing, the court deems petitioner to have abandoned his initial allegation that he instructed Mr. Leonard to appeal immediately after his sentencing hearing. The court's analysis will therefore focus on petitioner's current version that he requested an appeal after arriving at his designated prison facility. Nonetheless, the court finds that petitioner has failed to establish by a preponderance of the evidence his former claim that he requested an appeal immediately after the sentencing hearing for the same reasons his current claim fails as set out below, excluding the lack of credibility of the allegation that Mr. Rivera requested an appeal on petitioner's behalf, which is inapposite to his former claim.

## II. Mr. Leonard's Testimony

Contrary to petitioner's allegation that he expressly requested an appeal, Mr. Leonard testified that petitioner made no such request. (Tr. 36:22-25; 40:24 to 41:9). Upon consideration of the testimony presented and other evidence of record, the court finds that petitioner has failed to show by a preponderance of the evidence that he instructed Mr. Leonard to file an appeal.[5] Petitioner's ineffective assistance of counsel claim accordingly fails.

Fundamental to the court's conclusion is that it finds Mr. Leonard's testimony on the material factual issues to be credible. First, Mr. Leonard's testimony was matter-of-fact, not adversarial, in tone. He evinced no hostility, but rather genuine concern about achieving the best possible outcome in petitioner's case. His credibility is further supported because of his

---

[5] Apparently in response to the government's opening and closing arguments at the hearing (*see* Tr. 4:2 to 5:5), petitioner appears to have raised the additional argument in his supplemental brief that Mr. Leonard was ineffective for failing to consult with him about an appeal (Suppl. Mem. ¶ 19). However, petitioner stated expressly in his memorandum in support of his original petition that any consultation issue "is moot, because he [,] regardless of any advice from counsel, expressly told his counsel to appeal." (Pet. 6). Nevertheless, this issue is outside the scope of both the Fourth Circuit's remand and the order referring petitioner's claim to the undersigned. (*See* 4 Dec. 2013 Op. 3-4 (remanding for further proceedings on the issue of whether "counsel rendered ineffective assistance of counsel in failing to file a notice of appeal as requested"); 6 Jan. 2014 Refer. Order). Because the sole issue before the court is whether petitioner instructed Mr. Leonard to file an appeal, the court will not address the consultation argument.

substantial experience as a criminal defense attorney. He has been representing defendants in state and federal criminal cases for over 30 years. (Tr. 31:2-16).

Moreover, Mr. Leonard's conduct in representing petitioner, as described in his testimony, is consistent with that of an experienced criminal defense lawyer. Mr. Leonard's testimony demonstrates a conscientious and proper effort on his part to make sure that petitioner received the lowest sentence possible under the circumstances of the case. Mr. Leonard testified credibly that he told petitioner that the best sentence he thought possible would be 84 months. (Tr. 38:11-19). This estimate is consistent with the maximum sentence suggested to the court by Mr. Leonard in the sentencing memorandum filed on petitioner's behalf. (Sent. Mem. (D.E. 207); Tr. 38:5-22). Further, petitioner's 90-month total sentence for both counts was significantly lower than the statutory minimum 10-year sentence (*i.e.*, 120 months) he could have received for the firearm offense, alone. (Tr. 35:6-10). Accordingly, a reasonable defendant in this circumstance would likely view 90 months' imprisonment as a favorable outcome that did not warrant further challenge on appeal. Indeed, Mr. Leonard testified that petitioner was happy with the outcome. (Tr. 38:19-22).

Mr. Leonard testified that had petitioner requested an appeal, he would have advised petitioner against it because he got a "good deal," especially considering that a codefendant, who was less involved in the offense conduct, received a sentence of about 200 months after pleading not guilty. (Tr. 39:25 to 40:10). Mr. Leonard testified that he would have further explained to petitioner that he would be "running a risk" if he were to be later "resentenced without acceptance of responsibility." (Tr. 40:11-15). For this and the other reasons stated, Mr. Leonard's appraisal that the sentencing outcome was a favorable one is more than reasonable

Case 7:09-cr-00100-D   Document 310   Filed 11/12/14   Page 8 of 13

under the facts presented, thereby supporting his testimony that petitioner was happy with his sentence and did not request an appeal.

Despite petitioner's testimony that he was unable to reach Mr. Leonard by telephone after arriving at the correctional facility to request an appeal, Mr. Leonard testified that, at other times during his representation of petitioner, petitioner had been able to reach him by telephone by calling him collect, as Mr. Leonard instructs all of his clients to do. (Tr. 32:20 to 33:2). Mr. Leonard further testified that on some of those occasions petitioner had a Spanish interpreter on the phone to interpret for him. (Tr. 32:24 to 33:1).

Regarding petitioner's allegation that he requested an appeal through Mr. Rivera after arriving at the correctional facility, Mr. Leonard acknowledged that he had communicated with Mr. Rivera both in person and by email in the period leading up to sentencing, but also credibly testified that he did not have any recollection of being contacted by Mr. Rivera after sentencing. (Tr. 42:9 to 43:25). Assuming for the sake of argument that Mr. Leonard's recollection about speaking to Mr. Rivera after sentencing is inaccurate, Mr. Rivera's testimony about his alleged phone call to Mr. Leonard does not show that an appeal request was made. Mr. Rivera testified that petitioner's uncle called him "probably about a week or two after [sentencing]" (Tr. 25:22 to 26:2) and informed him that petitioner "want[ed] to do the appeal" (Tr. 24:21-24). Mr. Rivera further testified that when he called Mr. Leonard to ask him to pursue an appeal, Mr. Leonard told him that an appeal "could cause [petitioner] to get more years [in] jail because his sentence was reduced because he was helping with–testifying against . . . the guys who did the robbery with him." (Tr. 27:1-7). This explanation is consistent with what Mr. Leonard testified he would have advised petitioner if he had requested an appeal. When asked if Mr. Leonard refused to enter an appeal, Mr. Rivera testified that after Leonard's statement about the risks of an

appeal, "we got kind of scared to—instead of helping him, making it worse for him. So, we decided not to—not to do [anything else]." (Tr. 27:12-17). Accordingly, Mr. Rivera's own testimony undermines petitioner's assertion that Mr. Rivera asked Mr. Leonard to file an appeal.

Moreover, there is no evidence that Mr. Leonard had any motive to refuse any request by petitioner to file an appeal, and Mr. Leonard testified that, had he been instructed to appeal, he would have done so. (Tr. 39:25 to 40:3). He further specified that had Mr. Rivera requested an appeal on behalf of petitioner and it was "within the period of time within which to file a notice of appeal, [he] would have gone to see [petitioner] right away and talked to him again and if he was still insistent [he] would have filed an appeal." (Tr. 44:1-7). To illustrate this point, Mr. Leonard explained that he had a recent client who had been "hammered a little bit in sentencing" and, although he did not see any grounds to appeal, he wrote the client a letter requesting the client to call him about an appeal. (Tr. 44:8-15). When the client did not contact him and there was insufficient time for Mr. Leonard to go to Virginia to meet with the client before the time for appeal expired, he proceeded to file a notice of appeal anyway. (Tr. 44:15-17). He did so because he suspected that his client may have wanted to appeal and despite his client's having waived his appeal rights. (Tr. 44:19-22).

For the reasons discussed, the court finds Mr. Leonard's testimony that petitioner did not request an appeal to be credible.

### III. Petitioner's Testimony

While Mr. Leonard's testimony is consistent and corroborated by the record, the same cannot be said of petitioner's testimony. In fact, petitioner's credibility on whether or not he instructed Mr. Leonard to file an appeal is severely, if not completely, eroded by the fact that his testimony at the hearing stands in direct conflict with the factual allegations in his petition, his

statements in his certificate of appealability, and his sworn statements in the affidavit submitted in support of his appeal. As noted above, petitioner stated unequivocally in his affidavit that after being sentenced and prior to being removed from the courtroom,[6] he "was unsatisfied with the term of 90 months imprisonment received and requested [his] counsel to appeal." (Pet. Aff. ¶ 7). Petitioner then proceeded to offer sworn testimony at the hearing that he *did not* request an appeal at any time on the day of his sentencing (Tr. 6:24 to 7:9; 11:18 to 12:18; 12:19-25), but rather made his request through Mr. Rivera after reaching the correctional facility (Tr. 7:6-8:20). Additionally, while petitioner stated in his affidavit that his desire to appeal arose immediately upon hearing the court pronounce his 90-month sentence, he testified at the evidentiary hearing that he did not become aware that he had been sentenced to 90 months until *after* he arrived at the correctional facility, having believed until that time that he had received only 60 months (Tr. 8:6-16; 18:21-25). In addition, petitioner has offered no explanation for these conflicting factual allegations.

Not only did petitioner's testimony conflict with his prior statements, but his testimony itself was inconsistent. Specifically, petitioner first testified that he made the decision to appeal immediately after sentencing but that he was unable to communicate this decision on that day because of the unavailability of an interpreter. (Tr. 6:4-7; 6:24 to 7:14). Petitioner then later testified that he did not decide that he wanted to appeal until *after* he arrived at the correctional facility because it was not until then that he allegedly became aware that he had received a sentence of 90 months. (Tr. 8:6-16). This and the other extensive inconsistencies in petitioner's sworn statements and testimony are, indeed, striking. *See Wilson*, 624 F.3d at 665.

---

[6] As indicated by both Mr. Leonard's testimony (Tr. 38:23-25) and the sentencing transcript (Sent. Tr. 3:4-8), an interpreter was available to petitioner during and immediately following the hearing, and petitioner represented to the court that he was able to understand the proceedings (Sent. Tr. 3:22-25).

Other testimony by petitioner is undermined by the record in this case. For example, petitioner testified that he was told by Mr. Leonard that the maximum sentence he could receive was 57 months and was, therefore, "surprised" upon hearing the court pronounce a 90-month sentence. (Tr. 18:19-25). This testimony strains credulity given that petitioner was advised by the court at the beginning of the sentencing hearing, but before ruling on the government's downward departure motion, that he faced a maximum total penalty of 177 months under the Guidelines. (Sent. Tr. 7:11-23). Moreover, as Mr. Leonard testified, petitioner's own sentencing memorandum requested that the court not sentence him to more than 84 months. (Tr. 38:11-20; Sent. Mem. (D.E. 207) 5).

Lastly, it is clear that petitioner had a strong incentive to lie at the hearing about his purported request for an appeal. That claim represents perhaps the only remaining avenue open to petitioner to potentially escape service of the extended prison term imposed on him.

For the forgoing reasons, the court concludes that petitioner did not request Mr. Leonard to file an appeal on his behalf. Petitioner has therefore failed to show that in not filing an appeal Mr. Leonard contravened any instructions that petitioner had given him. Petitioner's claim of ineffective assistance of counsel based on the alleged failure to file an appeal as instructed should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the government's motion (D.E. 249) to dismiss petitioner's claim of ineffective assistance of counsel for failure to file an appeal be GRANTED and that this claim be DISMISSED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 26 November 2014 to file written objections.

Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

SO ORDERED, this the 12th day of November 2014.

James E. Gates
United States Magistrate Judge